**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>Yacoobian Enterprises LP<br><br>                                   Debtor(s).<br><br>Yacoobian Enterprises, L.P.<br><br>                                   Plaintiff(s),<br>    v.<br><br>Canico Enterprises, LLC, Dumaine 9, LLC<br><br>                                   Defendant(s). | Case No.: 1:10-bk-19542-GM<br>Adv No:  1:11-ap-01201-GM<br>Chapter 11<br><br>**MEMORANDUM OF OPINION REGARDING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT ON THE COUNTERCLAIMS OF DUMAIN 9 LLC [DOCKET 53]**<br><br>Date: August 28, 2012<br>Time: 10:00 A.M.<br>Place: Courtroom 303 |

FILED & ENTERED

SEP 04 2012

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

On January 20, 2012, the three buildings on which Dumaine 9, LLC ("Dumaine") claimed a junior lien were sold by the Trustee under 11 U.S.C. §363. The Trustee had objected to the senior lien of Canico Capital Group, LLC ("Canico"), which was asserted in the amount of $11+ million. Canico and the Trustee settled, at which point the property was sold to a third party for $9.8 million. The sale order was entered approving the distribution of the sale proceeds in accordance with the Canico settlement.[1]

The settlement agreement, as to which Dumaine was noticed, provides that the Canico lien attached in first priority position to the gross proceeds of the sale. The operative paragraph of the settlement agreement for the present motion for summary judgment is as follows:

---
[1] 1:10-bk-19543-GM, doc. #379.

> That portion of the Canico Lien attaching to $1,250,000 **(which portion shall be paid out of the Winning Bid Deposit, with the remainder to be paid out of the other Gross Proceeds)** plus 50% of all Gross Proceeds received from the sale in excess of $8,900,000 shall be avoided pursuant to 11 U.S.C. § 544, preserved for the benefit of the estate and transferred to the Trustee pursuant to 11 U.S.C. §§ 550 and 551, free and clear of all liens, claims, rights, encumbrances, or other interests (the "Avoided Amount"). By way of example, if the Gross Proceeds equal $9,800,000, the Avoided Amount shall be the sum of $1,250,000 plus (50% x ($9,800,000 minus $8,900,000)), which sum equals $1,700,000.[2]

In accordance with the settlement the Trustee received $1.7 million.

The Trustee filed the complaint in this case to determine the validity, priority, and extent of liens on these three hotel properties. Dumaine, one of the defendants, filed its counterclaim seeking the $1.7 million proceeds of sale that are being held by the Trustee and an injunction prohibiting the Trustee from disbursing this money to anyone other than Dumaine.[3]

### THE MOTION

<u>The Trustee's Motion for Summary Judgment[4]</u>

In this motion for summary judgment, the Trustee does not deal with the bona fides or the amount of the Dumaine claim. Rather, he asserts that the settlement left no proceeds for any junior lien and that even if there had been no settlement the sales price was insufficient to cover the senior lien and thus Dumaine would have received nothing from the sale. Because the Trustee was attacking the Canico lien at the time of the sale (thus leading to the settlement), even if the Trustee had prevailed on his avoidance suit, the estate would have succeeded to the first lien on the properties since

---

[2] 1:10-bk-19543-GM, doc. #381, p. 22, ¶2(a). (Emphasis in the original.)
[3] 1:11-ap-01201-GM, doc. #49. Unless otherwise noted, all documents refer to this adversary proceeding.
[4] Doc. 53.

§551[5] prevents junior lienors from improving their position at the expense of the estate when a senior lien is avoided.

Dumaine's Opposition[6]

Dumaine asserts that the reason for this motion is so that the Trustee can pay himself and his professionals from the sale proceeds. Further the settlement was simply a ruse to get around the principle established in Clear Channel and to remove Dumaine's lien without having to litigate it.

The case of Official Unsecured Creditors' Committee v. Stern (in re SPM Mfg. Corp.), 984 F.2d 1305 (1st Cir. 1993), which is the sole authority relied on by the Trustee, is not applicable. Because relief from stay had been granted in that case, the court treated the property as no longer being property of the estate. That is not the situation here. Thus the proceeds of the sale never belonged to Canico to do with as it pleased.

If the Trustee had avoided Canico's lien, the Trustee would merely have stepped into the shoes of Canico. But that does not void Dumaine's lien.

The Trustee could not sell free and clear of liens since the sale price did not exceed the aggregate amount of all liens against the property. Clear Channel Outdoor, Inc, v. Knupfer (In re PW, LLC), 391 B.R. 25 (9th Cir. BAP 2008). The Trustee could not sell free and clear of Dumaine's lien under §363(f)(3) or §363(f)(5).

---

[5] Unless otherwise noted, all section numbers pertain to 11 United States Code.
[6] Doc. 64.

Trustee's Reply[7]

The court's sale order, which was not objected to by Dumaine, provides in ¶ C that the proceeds of the sale are property of the secured creditor and not of the estate. Therefore In re SPM is not distinguishable and supports the Trustee's motion.

Also, the sale order provides that the alleged liens of Dumaine and others attached to "the proceeds of the sale with the same priority, validity and enforceability, if any, as they had had against the Assets, which proceeds [were] disbursed in accordance with the Canico Settlement."[8] Since there was not enough to cover the $11+ million senior lien, there were no sale proceeds for Dumaine's lien to attach to. Dumaine did not object to the sale, the sale order, the Canico settlement, or the Canico settlement order.

Clear Channel does not apply since the Trustee did not use §363(f)(3) or §363(f)(5) to sell the properties free and clear of Dumaine's lien. He relied on §§363(f)(1), (2), and (4). Section 363(f)(1) would allow the sale because Dumaine was junior to Canico and Canico could have foreclosed Dumaine out. A foreclosure sale is a sale of the property. Section 363(f)(2) can be interpreted to mean that Dumaine's silence was consent to the sale. Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliott), 94 B.R. 343 (E.D. Pa. 1988).

Dumaine's Surreply[9]

The surreply only states that in California a §363 sale is not equated to either a judicial or nonjudicial foreclosure sale. Coppola v. Superior Court, 211 Cal.App.3d 848,

---

[7] Doc. #67.
[8] 1:10-bk-19543-GM, doc. #379, p. 7:20-21,
[9] Doc. #71.

857, 865 & 873 (Cal. Ct. App. 1989).

Trustee's Supplemental Brief in Support of Summary Judgment on the Counterclaims[10]

The Trustee argues that he never sought to eliminate, erase, or set-aside the Canico claims and liens without those claims and liens being transferred and preserved for the Estate. Dumaine's counterclaims are predicated on the assertion that the Trustee has proceeds from the §363 sale, but there are no such proceeds. The Third Amended Complaint merely seeks to avoid and recover for the estate the Initial Hotel Transfer, the Additional Hotel Transfer, and the Roscoe Transfer - all under §544. It also (alternatively) seeks to equitably subordinate the Canico Lien and claim under §510.

The Court's final order on the §363 sale and the Canico settlement are dispositive of the treatment of Dumaine's lien claim. Canico was owed $11+ million and the sale yielded $9.8 million. Per the sale order and the settlement order, the proceeds of the sale were to be paid to Canico and nothing was left for any junior lienholder. Since the counterclaims are predicated on Dumaine's alleged junior liens in the proceeds held by the Trustee, because the Trustee never held any proceeds summary judgment must be granted to the Trustee. To allow any other scenario would be a collateral attack on the finality of the sale and settlement orders.

The Third Amended Complaint did not seek to set-aside or wipe-out the Canico lien. Rather, it sought to recover the transfers for the benefit of the estate or for equitable subordination to the Dumaine lien.

---

[10] Doc. #81.

The anti-move up provision of §551 prevents junior lienors from improving their position at the expense of the estate when a senior lien is avoided.  Under §510(c) the lien is transferred to the estate and the subordinated claim becomes unsecured with the property securing the claim becoming part of the debtor's estate.  Thus, if the Trustee had prevailed against Canico on all of his claims for relief, Dumaine would not have moved up, but the estate's lien would have attached to the first $11+ million of the sale proceeds and given that the sale proceeds were less than that, nothing would have been left for junior lien holders.

Also, if Canico would have been successful, it would have a lien on the total sales proceeds, since they did not exceed $11+ million, and nothing would be left for Dumaine.  If the Trustee had succeeded against Canico on only part of his assertions so that Canico's lien would have been reduced, the anti-move up provisions would still have meant that there would be nothing left for Dumaine since the estate would take the place of that portion of Canico's defeated lien.

Dumaine's Supplemental Brief in Opposition to the Motion for Summary Judgment on the Counterclaims[11]

Because the Court only requested supplemental briefing, the Court should not consider the supplemental facts asserted by the Trustee.

The Canico claim was subject to subordination because of the defects asserted by the Trustee in the complaint.  Dumaine concentrates on the Trustee's 13th claim for relief (equitable subordination), which specifically states that the Trustee was seeking to have the Canico lien subordinated to the Dumaine lien.  This is also in the 5th claim for

---

[11] Doc. #83.

relief and the Trustee argued in his opposition to the Canico motion to dismiss that the law supports the Trustee's ability to subordinate the entire Canico lien to that of Dumaine because the modification of the initial Canico lien was done without notice to the junior lien and was detrimental to it.

Trustee's Supplemental Reply Brief[12]

Dumaine does not address the issues raised by the Trustee. The Trustee agrees that he did seek to equitably subordinate the Canico claim and lien, but the anti-move up provision would still apply. This is not addressed in the Dumaine supplemental opposition.

## RULINGS ON EVIDENTIARY OBJECTIONS

Declaration of David Gottlieb:

Overrule all objections except as to Ex. 1, which is not attached to the docketed copy of the declaration of David Gottlieb. Assuming that it is the closing statement, it can be admitted to show what the Trustee received.

Exhibit 1:

Assuming that a copy is actually filed with the court: If there is truly a best evidence objection, the movant is to file the original with the court. As to anything except what the estate received, this is hearsay and needs a declaration from the escrow company as a business record.

---

[12] Doc. #89.

## THE COURT'S RULING

The facts in the motion for summary judgment are not in dispute. The question is whether the Trustee is entitled to judgment as a matter of law.[13] The only issue presented in this counterclaim and motion is whether, under any applicable legal standard, Dumaine would be entitled to the $1.7 million that the Trustee is holding from the sales proceeds. In other words, is this money that Canico was entitled to and gave up? Was it money that the Trustee would have received if he had successfully set aside all or part of Canico's claim? And what is the effect of either?

Scenario 1 – <u>Trustee litigated against Canico and lost</u>: If the Trustee were to have lost against Canico, there would have been no money left for junior liens. Thus Dumaine would be entitled to nothing.

Scenario 2 – <u>Trustee litigated against Canico and won, reducing Canico's lien to less than $9.8 million</u>: The Third Amended Complaint seeks to avoid and recover fraudulent transfers, equitably subordinate the liens, and obtain declaratory relief.[14] Although there are various theories stated in the complaint, the prayer as to each of the fraudulent transfer claims asserted against Canico seeks to avoid Canico's claim and lien "for the benefit of the Estate" and also asks for the "[r]ecovery and preservation of the [transfer] of the value thereof for the benefit of the Estate, pursuant to Bankruptcy Code §§ 550 and 551." The claim for subordination includes both a prayer under §521(c) to equitably subordinate the claim and that "the Trustee is entitled to an order transferring to the Estate any lien securing the Canico Remaining Claim."

As noted above, the settlement order, to which Dumaine consented through silence and which is no longer subject to attack by Dumaine, specifically provides that

---

[13] Fed. R. Civ. Proc. 56(a), applied to adversary proceedings by Fed. R. Bankr. Proc. 7056.
[14] Doc. #36.

the Canico lien attaches to the entire gross proceeds of the sale, but that as a part of the settlement "proceeds received from the sale in excess of $8,900,000 shall be avoided pursuant to 11 U.S.C. § 544, preserved for the benefit of the estate and transferred to the Trustee pursuant to 11 U.S.C. §§ 550 and 551." It goes on to state that this will be free and clear of liens. But since Dumaine was not a party to the settlement agreement, this language cannot constitute lien stripping as to Dumaine.

The parties to the settlement with Canico agreed that it had a lien on all of the proceeds of the sale, but that it was willing to have the amounts in excess of $8.9 million avoided under §544 and preserved for the benefit of the estate under §§ 550 and 551. Section 551 is very specific when it states that a transfer avoided under §544 [and other sections] "is preserved for the benefit of the estate but only with respect to property of the estate." Thus, if the Trustee avoids a senior lien on property of the estate, the Trustee takes the place of that senior lienholder and the junior liens do not move up in value or priority. See Waldschmidt v. Edgcomb Metals (In re Ward), 42 B.R. 946, 951 (Bankr. M.D. Tenn. 1984), cited favorably in Castle Nursing Homes, Inc. v. Ransier (In re Sullivan), 2007 Bankr. LEXIS 1008 (6th Cir. BAP 2007).

These holdings reflect the intent of Congress when §551 was included in the current bankruptcy law:

> § 551. Automatic preservation of avoided transfer
> This section is a change from present law. It specifies that any avoided transfer is automatically preserved for the benefit of the estate. Under current law, the court must determine whether or not the transfer should be preserved. The operation of the section is automatic, unlike current law, even though preservation may not benefit the estate in every instance. A preserved lien may be abandoned by the trustee under proposed 11 U.S.C. 554 if the preservation does not benefit the estate. The section also preserves for the benefit of the estate any lien that is void under section 506(d). *The section as a whole prevents junior lienors from improving their position at the expense of the estate when a senior lien is avoided.*

Report of the Committee on the Judiciary, House of Representatives, To Accompany H.R. 8200, H.R. Rep. No. 95-595, 95th Cong., 1st Sess. (1977), reprinted in Collier on

Case 1:11-ap-01201-GM    Doc 92    Filed 09/04/12    Entered 09/04/12 11:38:23    Desc
Main Document    Page 10 of 11

Bankruptcy, 16th Ed., App. Pt. 4(d). (emphasis added)

In <u>In re Blanks</u>, 64 B.R. 467, 469 (Bankr. E.D.N.C. 1986) the junior lien sought to move-up when the senior lien was avoided by the Trustee. The court refused to allow this, holding that §551 is intended to prevent a windfall to junior lienors when the Trustee successfully avoids a senior lien. Otherwise the junior lien would improve its position at the expense of the estate. <u>See also</u> <u>Retail Clerks Welfare Trsut v. McCarty (In re Van de Kamp's Dutch Bakeries)</u>, 908 F.2d 517, 519 (9th Cir. 1990).

Dumaine cannot take advantage of the settlement agreement to move into first position, but it remains behind the amount avoided by the Trustee, which is this case is $1.7 million. No other proceeds of the sale remain.

The Court does not need to deal with the theory of equitable subordination since it is clear that the settlement agreement was meant to remove the lien from any amount above $8.9 million.

Grant the motion for summary judgment in favor of the Trustee as to Dumaine's counterclaim.

###

DATED: September 4, 2012

_____
United States Bankruptcy Judge

-10-

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*): **MEMORANDUM OF OPINION REGARDING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT ON THE COUNTERCLAIMS OF DUMAIN 9 LLC [DOCKET 53]**
was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner stated below:

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** – Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of (*date*)_____, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

Howard Weg Email: hweg@peitzmanweg.com
James P. Menton Email: jmenton@peitzmanweg.com
Lauren Gans Email: lgans@peitzmanweg.com
Jacquelyn H. Choi Email: jchoi@swjlaw.com
Barry S. Glaser Email: bglaser@swjlaw.com
John C. Keith Email: jkeith@pwkllp.com
Louis Kempinsky Email: lkempinsky@pwkllp.com
Henry Saltzburg Email: hls@srblaw.com
James Selth Email: jim@wsrlaw.net
Michael Weiss Email: mw@weissandspees.com

☐ Service information continued on attached page

**2. SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

☐ Service information continued on attached page

**3. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

☐ Service information continued on attached page

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                       **F 9021-1.1.NOTICE.ENTERED.ORDER**